## 38278. WILSON v. ZANT.

HILL, Presiding Justice.

The defendant, Joseph Wilson, Jr., was convicted of murder, kidnapping with bodily injury and possession of a firearm during the commission of a felony. His convictions and death sentence for murder, life sentence for kidnapping with bodily injury and five-year sentence for possession of a firearm were affirmed on direct appeal by this court in *Wilson v. State,* 246 Ga. 62 (268 SE2d 895) (1980), cert. denied, 449 U. S. 1103. The defendant then filed a petition for a writ of habeas corpus, alleging various violations of his constitutional rights. After a hearing, the habeas court set aside the possession of a firearm conviction but denied further relief. We granted the defendant's application for certificate of probable cause to appeal and defendant enumerates six errors.[1]

---

[1] Although Wilson appears as the petitioner in this habeas corpus case, he will be identified as the defendant for the purposes of this opinion.

We quote the facts from our earlier decision in this case (246 Ga. 62-63): "From the presentation of the evidence the jury was authorized to find the following: The defendant, Joseph Wilson, Jr., and the victim, George A. Knox, and the victim's girl friend, Patty Johnson, were involved one to another or all together in some sort of drug deal.

"On the evening of February 23, 1979, the defendant told two witnesses that he was going to blow the victim away. At about 9:45 p.m. that night the defendant abducted the victim at gunpoint from Patty Johnson's house in Cobb County. The victim was in the house with Ms. Johnson and two of his friends when the defendant entered the house carrying a 12-gauge, sawed-off shotgun. He pointed the gun at the victim and said something to the effect that 'You set me up' or 'You put the heat on me.' The victim denied the allegation. The two friends, David and Kenneth Burns, attempted to leave but the defendant pointed the shotgun at them. After being assured that these two knew nothing, the defendant permitted them to go. The defendant again pointed the shotgun at the victim and said, 'Let's go.' The victim attempted to take his jacket and a chain that he carried, allegedly for protection, but was told he wouldn't need them. The defendant and the victim left the house in the defendant's truck. The Burns brothers saw them come out of the house. Later that night the defendant talked with Ms. Johnson over the telephone and told her that the victim had been 'taken care of.' The defendant told her to get rid of the victim's jacket.

"The victim's body was found the next morning in a field in Forsyth County. He had been shot by a 12-gauge shotgun blast between the eyes at close range. The evidence at the scene indicated that the body was found where the shooting occurred. A neighbor testified that she heard a shot at about 1 a.m. There were no other wounds on the body. The defendant was subsequently arrested, indicted, tried, and based primarily upon the testimony of Patty Johnson, David and Kenneth Burns and the investigating officers, was convicted of the murder of George A. Knox, the kidnapping with bodily injury of George A. Knox, and possession of a firearm during the commission of a crime. . . . The evidence was sufficient to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)."

The following additional facts are pertinent to our consideration of this appeal. Patty Johnson was acquainted with and identified the defendant; although unable to positively identify the defendant, the Burns brothers corroborated her testimony. All three of these witnesses stated that the victim's abductor was driving a pickup truck with a peculiar ladder arrangement attached to the rear. After

interviewing witnesses at a party who said that the defendant was looking for and threatening to shoot the victim on the evening in question and after interviewing Patty Johnson and the Burns brothers, the police obtained a warrant for the defendant's arrest.

The defendant was arrested at his home at approximately 6:30 a.m. on February 27, 1979, read his Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) rights and transported to the Forsyth County Sheriff's Department where he was held until approximately 8:00 a.m. The defendant was then questioned by Sergeant J. C. Adams. At trial, Sergeant Adams testified that sometime between his arrest and the interrogation the defendant stated that he "would like to have an attorney." However, an attorney was not provided and after again being advised of his Miranda rights and signing a written Miranda acknowledgment and waiver form, the defendant gave a statement to police.

In his statement to police, the defendant denied committing the crimes and claimed alibi. He admitted looking for the victim at the party on February 23, allegedly because the victim owed him money and was supposed to meet him there to repay it, and admitted threatening at that time to "kick [the victim's] ass" for failing to be at the party to repay the loan. However, he denied threatening to blow the victim away. He stated that he had been at home with his family at the time the victim was killed.

Under further questioning, the defendant denied owning a shotgun and said that the only gun he owned was a toy "tin-can alley" gun which he had given to his children. He admitted that he drove a truck similar to the one described by Patty Johnson and David and Kenneth Burns as driven by the man who entered the Johnson residence with a shotgun and informed police that the truck belonged to his business partner, David Shaffer. Subsequently, the police interviewed David Shaffer in connection with the truck and learned from him that the defendant had recently purchased a shotgun from Joseph Evankovech.

At trial, witnesses for the state related to the jury most of the defendant's statement to police.[2] The state also introduced the toy gun to show that it could not have been the gun the defendant had been seen with on prior occasions or the gun which was used to abduct the victim. Further, the state elicited testimony from Shaffer and

---

[2] The trial court determined in a Jackson v. Denno 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964) hearing that the defendant's statement was "knowingly, freely, willingly, and voluntarily made." The statement itself was not offered into evidence.

Evankovech that the defendant did in fact own a shotgun and introduced photographs of the truck driven by the defendant.

After the state presented its case, the defendant took the stand and testified to essentially the same facts contained in his statement to police except that he admitted purchasing a shotgun from Evankovech.[3] At the sentencing phase of the trial, the defendant again took the stand and at this point admitted that on the evening of February 23, he went to the Johnson home and pointed a shotgun at the victim. He admitted that the victim accompanied him out of the house but testified that once outside, a truck drove up and two men forced the victim inside the truck at gunpoint. These men, he speculated, must have been the ones who murdered the victim.

1. The defendant first contends that the introduction at trial of the statement he gave to police during custodial interrogation after he had requested an attorney but before one was provided (and the introduction of the "fruits" derived by police from his statement, namely the toy gun and the testimony of Shaffer and Evankovech) violated his fifth, sixth and fourteenth amendment right to counsel as defined in the recent United States Supreme Court case of Edwards v. Arizona, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

The habeas court found that the defendant had properly invoked his right to counsel, that the police had subsequently initiated custodial interrogation before counsel was present and, therefore, concluded that the defendant's resulting statement should not have been admitted at trial, relying on Edwards v. Arizona, supra, 101 SC 1880, decided after defendant's trial. However, the habeas court also found that the statement was not a confession, that it had been used for impeachment purposes only, and that its erroneous admission was harmless beyond a reasonable doubt. In response to the defendant's argument that the toy gun and the testimony concerning his ownership of a shotgun should have been excluded as "fruit of the poisonous tree," the habeas court found that the toy gun had been used only for impeachment purposes and that the testimony about the shotgun was not obtained as the result of the defendant's statement. Thus, the habeas court declined to grant relief on this issue.

Accepting that Edwards v. Arizona, supra, established a per se exclusionary rule (but see the concurring opinion of Powell, J., 101 SC at 1887-1889), we therefore find that the defendant's statement,

---

[3] There is no threshold showing here, as there was in Harrison v. United States, 392 U. S. 219, 222-24 (88 SC 2008, 20 LE2d 1047) (1968), that the defendant was impelled to take the stand by the admission of his statement to police.

given pursuant to police initiated custodial interrogation after the defendant had invoked his right to counsel, was inadmissible at trial during the state's case in chief.

This conclusion, however, does not end our inquiry, and we now address the final question in habeas corpus: whether the error was harmful. See *McDuffie v. Jones,* 248 Ga. 544, 545-46 (283 SE2d 601) (1981). We recognize that it is error to admit statements obtained in violation of Miranda v. Arizona, supra, whether such statements constitute confessions, incriminating admissions or exculpatory statements (384 U. S. at 476-477). However, for the purpose of determining the harmful or harmless nature of the error, whether a defendant's statement is exculpatory or incriminating is material. Here we deal with exculpatory statements to police admitted into evidence.

The evidence for the state showed that the defendant was looking for and threatening to kill the victim, that he found the victim and abducted him at the point of a shotgun, that the victim was murdered with a shotgun, and that the defendant impliedly admitted to Patty Johnson that he had killed the victim. We find no reasonable possibility that the admission of defendant's exculpatory (alibi) statements to police might have contributed to the conviction and therefore find that the admission of his statements was harmless beyond a reasonable doubt. Schneble v. Florida, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972); Chapman v. California, 386 U. S. 18, 23-24 (87 SC 824, 17 LE2d 705) (1967); *McDuffie v. Jones,* supra, 248 Ga. at 546, fn. 3.

The defendant contends that three items of evidence used by the state at trial were obtained directly as the result of his statement to police and, therefore, were "fruit of the poisonous tree," see Harrison v. United States, supra (fn. 3), which should have been excluded at trial. The items are photographs of the defendant's truck,[4] the toy gun, and testimony that the defendant owned a shotgun. The defendant's argument is based upon the premise that evidence obtained as a result of statements taken in violation of Edwards v. Arizona, supra, are subject to the "exclusionary rule." See Weeks v. United States, 232 U. S. 383 (34 SC 341, 58 LE 652) (1914); Mapp v. Ohio, 367 U. S. 643 (81 SC 1684, 6 LE2d 1081) (1961); Silverthorne Lumber Co. v. United States, 251 U. S. 385 (40 SC 182, 64 LE 319) (1920).

However, the United States Supreme Court has never extended

---

[4] The defendant claims for the first time on appeal that the photographs of the truck were obtained as the result of his statement.

the exclusionary rule to the "fruit" of a Miranda-tainted statement. In Michigan v. Tucker, 417 U. S. 433 (94 SC 2357, 41 LE2d 182) (1974), the Court held that the "fruit" of a statement procured by police when the defendant had not been advised of his right to appointed counsel did not fall within the ambit of the exclusionary rule. However, the Court placed considerable emphasis on the fact that the statement was obtained prior to the Miranda decision and the majority expressly declined to resolve the question of whether the holding applied to post-Miranda cases. See Michigan v. Tucker, supra, 417 U. S. at 447.

We understand Edwards to be an application of the prophylactic rules of Miranda. A distinction is drawn between police conduct which infringes directly upon an accused's constitutional rights and conduct which violates only the prophylactic rules developed to protect those rights. The "fruit" of a statement which was obtained in violation of a constitutional right must be suppressed, Wong Sun v. United States, 371 U. S. 471, 484-85 (83 SC 407, 9 LE2d 441) (1963); see also United States v. Crews, 445 U. S. 463, 470 (100 SC 1244, 63 LE2d 537) (1980), but the "fruit" of a statement obtained in violation of a prophylactic rule is not automatically subject to the exclusionary rule. See Michigan v. Tucker, supra, 417 U. S. at 439, 446-52; United States ex rel. Hudson v. Cannon, 529 F2d 890, 892-95 (7th Cir. 1976).

We are aware that the First Circuit has recently held that the "fruits" of an Edwards-tainted statement must also be excluded at trial. United States v. Downing, 665 F2d 404, at 407-09 (1st Cir. 1981).[5] However, in a concurring opinion in Michigan v. Tucker, supra, Justice White stated that he would hold that the exclusionary rule does not apply to the "fruit" of a voluntary but Miranda-tainted statement. See Michigan v. Tucker, supra, 417 U. S. at 460-61 (White, J., concurring).

With respect to an unresolved constitutional question, when faced with choosing between extending the exclusionary rule or following Justice White's view in Michigan v. Tucker, supra, we adopt the latter. See Oregon v. Hass, 420 U. S. 714, 719 (95 SC 1215, 43 LE2d 570) (1975); Fare v. Michael C., 439 U. S. 1310, 1314 (Rehnquist, Circuit Justice 1978). We therefore hold that the exclusionary rule does not apply to evidence derived from a voluntary statement[6] obtained in violation of Edwards v. Arizona, supra, and

---

[5] The Fifth Circuit apparently has not finally decided this issue. United States v. Brookins, 614 F2d 1037, 1040 fn. 1 (5th Cir. 1980).

[6] See fn. 2 above.

that it was not error to admit the "fruits" of the defendant's statement in this case.

2. The defendant was convicted of murder (Code § 26-1101) and possession of a firearm during the commission of a felony (Code § 26-9908a) (as well as kidnapping with bodily injury), all arising out of the abduction and death of the victim. The habeas court set aside the conviction for possession of a firearm during commission of a felony "because the weapon possessed was the same one used in the commission of the murder [and, therefore,] the offense of possessing the deadly weapon during the commission of a felony (the murder) would be an included offense under Ga. Code Ann. § 26-506, and [the defendant] cannot be convicted and sentenced for both the greater and lesser offenses. *State v. Estevez,* 232 Ga. 316 (1974)."

In his second enumeration of error the defendant urges that his murder conviction, not his conviction for possession of a firearm, must be set aside because here, he argues, murder is the lesser included offense of possession of a firearm during the commission of a felony in that murder was established by proof of less than all the facts required to prove the possession offense. See *Haynes v. State,* 249 Ga. 119 (288 SE2d 185) (1982) (Marshall, J., dissenting). Because successive prosecutions are not involved, this enumeration presents an issue in regard to the substantive, as opposed to the procedural, prong of double jeopardy. See *State v. Estevez,* supra, 232 Ga. at 317.

There is no question that convictions for both murder and possession of a firearm during the commission of a felony are not constitutionally prohibited, even when the felony relied on for the possession conviction is the murder, because the two offenses, Code §§ 26-1101, 26-9908a, have distinct statutory elements. See Illinois v. Vitale, 447 U. S. 410, 416 (100 SC 2260, 65 LE2d 228) (1980); Blockburger v. United States, 284 U. S. 299, 304 (52 SC 180, 76 LE 306) (1932); Kowalski v. Parratt, 533 F2d 1071 (8th Cir. 1976), cert. denied, 429 U. S. 844; Michigan v. Brintley, 406 Mich. 374 (280 NW2d 793) (1979), appeal dismissed, 444 U. S. 948; *Haynes v. State,* supra (Marshall, J., dissenting).

However, as we have previously noted, our statutory, substantive double jeopardy provisions, Code Ann. §§ 26-505, 26-506, have expanded the proscription against multiple punishment for the same conduct beyond that required by the United States and Georgia Constitutions. *State v. Estevez,* supra, 232 Ga. at 317. Thus, in *Estevez* we applied the "actual evidence" test for resolving substantive double jeopardy questions instead of the less restrictive "required evidence" (or distinct statutory elements) test which is the constitutional minimum. Illinois v. Vitale, supra; see *Haynes v. State,*

supra (Marshall, J., dissenting). Using the "actual evidence" test, we have held that the offense of possession of a firearm during the commission of a felony merges into the felony upon conviction for both. *Chumley v. State,* 235 Ga. 540 (2) (221 SE2d 13) (1975); *Roberts v. State,* 228 Ga. 298 (2) (185 SE2d 385) (1971).

Yet even our expanded double jeopardy protections must be interpreted in light of the General Assembly's intention in enacting sanctions against criminal conduct. *State v. Estevez,* supra, 232 Ga. at 318. In 1976, the General Assembly amended Code Ann. § 26-9908a, the Code section which defines the offense of possession of a firearm during the commission of a felony. The amendment provides: "Notwithstanding any prior court decision to the contrary, any crime committed in violation of this section shall be considered a separate offense." Ga. L. 1976, pp. 1591, 1592. Thus, there is express legislative intent to impose double punishment for conduct which violates both Code Ann. § 26-9908a and other felony statutes. As we have already noted, such double punishment is not constitutionally prohibited.

We therefore hold that it does not violate our double jeopardy statutes to convict a person of both possession of a firearm during the commission of a felony and the accompanying felony in a single prosecution.[7] The contrary holdings in *Brown v. State,* 247 Ga. 298 (8) (275 SE2d 52) (1981), and *High v. State,* 247 Ga. 289 (12) (276 SE2d 5) (1981), both of which were decided after the 1976 amendment to Code Ann. § 26-9908a but relied on the pre-amendment cases of *Chumley* and *Roberts,* supra, are overruled. See also *Jackson v. State,* 143 Ga. App. 406 (2) (238 SE2d 752) (1977), and *Whitehead v. State,* 144 Ga. App. 836 (3) (242 SE2d 754) (1978). It follows that murder is not a lesser included offense under the crime of possession of a firearm during commission of a felony and that this enumeration of error is without merit.

3. The defendant next contends that the trial court's instructions to the jury on the elements of intent and malice created unconstitutional presumptions under Sandstrom v. Montana, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

In Sandstrom, the Supreme Court held that the charge, "the law presumes that a person intends the ordinary consequences of his voluntary acts," was unconstitutional because the jury may have

---

[7] The state has not filed a cross appeal as to the habeas court's setting aside of the defendant's conviction for possession of a firearm. Thus, even though we hold that it was not necessary to set aside that conviction, we do not reinstate the conviction for possession of a firearm during commission of a felony.

interpreted the presumption as either mandatory (as opposed to permissive) or as shifting the burden of persuasion on the issue of intent to the defendant. Both of these interpretations violate the fourteenth amendment requirement that the state prove every element of a crime beyond a reasonable doubt. See Sandstrom v. Montana, supra, 442 U. S. at 524; *Blankenship v. State,* 247 Ga. 590, 592 (277 SE2d 505) (1981). Thus, under Sandstrom, two inquiries must be made: (1) is the challenged presumption mandatory or permissive; and (2) even if the presumption is merely permissive, does it shift the burden of persuasion to the defendant on an element of the crime charged.

The relevant portion of the trial court's charge in this case is set out below. The defendant enumerates error as to the italicized portions.

"Mr. Joseph Wilson enters upon the trial of this case with a presumption of innocence in his favor. This presumption remains with him until he is proved guilty. No person shall be convicted of a crime, or crimes, unless each element of that crime, or those crimes, are proved beyond a reasonable doubt. . . .

"Now you must keep in mind that because the defendant is presumed to be innocent, and because the State must prove the guilt beyond a reasonable doubt, that the defendant has no burden of persuasion in the case. . . .

"Now malice as defined in the element of murder, is a state of mind, and frequently must be proved indirectly. It is an element of the crime of murder with malice aforethought and therefore must be proved by the state beyond a reasonable doubt. Implied malice also must be proved by the State. All the circumstances of the killing must show an abandoned and malignant heart. The State must so prove beyond a reasonable doubt . . .

"Now malice, as used in this definition of murder — either express or implied — is an essential element and ingredient of the offense of murder. As I have said, the burden is on the State to show malice, express or implied, beyond a reasonable doubt. . . .

"*If a person is killed by another, by an instrument, and the manner in which it was used was one likely to produce death, and at the time of the killing there were no circumstances such as to excite the fears of a reasonable man that he was in danger from the deceased, then the law will imply malice on the part of the defendant, and you would be authorized to find him guilty of murder, as charged in the indictment. . . .*

"Another essential element of the offenses charged is that of intention. Intent to commit these crimes charged in each and every count is an essential element the State must prove beyond a

reasonable doubt. . . .

"*Intent may be inferred from proven circumstances, or, as I have said, by acts, conduct, demeanor and motive, or it may be presumed, when it is the natural and necessary consequences of the act for which the defendant is being prosecuted.*"

Clearly the challenged instructions on malice and intent did not shift the burden of persuasion on those issues to the defendant. The jury was explicitly instructed that the state had the burden to prove both elements beyond a reasonable doubt. Thus, we find no violation of the second prong of Sandstrom. See, e.g., *Lackey v. State,* 246 Ga. 331, 338-39 (271 SE2d 478) (1980).

Turning now to the first prong of Sandstrom, we find that the trial court's charge on intent created a permissive, not a mandatory, inference or presumption. A presumption is mandatory, and· unacceptable under ·Sandstrom, if it "tells the trier of fact that 'he or they must find the ultimate fact upon proof of the basic fact.' *Williamson [v. State,* 248 Ga. 47, 54 (281 SE2d 512) (1981)], citing Ulster County, New York v. Allen, 442 U. S. 140, 157 (99 SC 2213, 60 LE2d 777) (1979). A permissive presumption or inference, on the other hand, is one which 'allows — but does not require — the trier of fact to infer the (ultimate) fact from proof by the prosecutor of the basic (fact).' *Williamson,* supra, at 54, citing Ulster County, New York, supra, at 157." *Davis v. State,* 249 Ga. 309 (290 SE2d 273) (1982). Here, the jury was instructed that under certain circumstances "intent *may* be inferred . . . or it *may* be presumed. . . ." (Emphasis supplied.) Thus, the charged presumption on intent was permissive and did not violate the defendant's right to due process. *Davis v. State,* supra.

The challenged charge on malice presents a more difficult problem, however, as it contains the language "the law will imply malice." We cautioned against the use of similar language in *Hosch v. State,* 246 Ga. 417 (3) (271 SE2d 817) (1980) (decided after the defendant's trial and convictions).

The charge at issue in *Hosch* provided: " 'I charge you that the law presumes that a person intends to accomplish the natural and probable consequences of his act, and if a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used and thereby causes the death of a human being, the law presumes the intent to kill. These presumptions may be rebutted.' " We held that this charge did not create unconstitutional mandatory presumptions because the jury was expressly instructed that the presumptions could be rebutted. *Hosch v. State,* supra, 246 Ga. at 419.

In contrast with *Hosch,* the charge in this case did not indicate to

the jury that the implication of malice could be rebutted. Further, nowhere in the trial court's instructions was the jury informed as to the rebuttable nature of presumptions generally. Thus, the jury might have interpreted this charge on implied malice to *require* an inference of malice if the evidence showed that the victim had been killed with a deadly weapon (here, a shotgun), unless extenuating circumstances were shown. If the jury understood the presumption as being mandatory, the state was relieved of its burden of proof on an essential element of the crime of murder and the defendant's right to due process of law was violated.[8] Sandstrom v. Montana, supra; *Hosch v. State,* supra, 246 Ga. at 420-21.

Again, however, the finding of error does not end our inquiry. Under certain circumstances, even Sandstrom errors may be found harmless beyond a reasonable doubt. Mason v. Balkcom, 669 F2d 222 [7] (5th Cir., 1982).[9] Therefore, we next consider whether the charge contributed to the defendant's conviction for murder.

The situation we are confronted with here is very similar to the one presented in United States v. Reeves, 594 F2d 536 (6th Cir. 1979); cert. denied, 442 U. S. 946. In Reeves, the defendant was charged with bank robbery and convicted despite his defense that "he was not the person who did it." On appeal, the Sixth Circuit found that the trial court's instructions on intent shifted the burden of proof on that issue to the defendant. However, the court determined that under these facts the erroneous charge was harmless. "[I]n this case the criminal intent of the person who robbed the bank was never placed at issue. Appellant's defense was simply that he was not the person who did it. This issue was clearly presented to the jury with the burden of proof beyond reasonable doubt placed squarely upon the government. More than adequate evidence to support the jury verdict was presented. . . . Under these circumstances, we find the error in the charge to be harmless beyond reasonable doubt." United States v. Reeves, supra, 594 F2d at 538.

Similarly, in this case the charge at issue related to malice, the intent element of murder. See Code Ann. § 26-1101 (a). The defendant's sole defense in the guilt phase of the trial was alibi. No

---

[8] In finding that this charge may violate due process, we necessarily overrule the pre-Sandstrom case of *Hill v. State,* 239 Ga. 836 (239 SE2d 21) (1977).

[9] Indeed, in Sandstrom itself, after the United States Supreme Court concluded that the trial court's charge on intent could have been interpreted as creating either a burden-shifting presumption or, as here, a conclusive presumption, the Court stated that the Supreme Court of Montana was free to consider the issue of harmless error on remand. Sandstrom v. Montana, supra, 442 U. S. at 526-27.

issue was raised that the victim, who was killed in a deserted field about 1 a.m. by a shotgun blast to the head from a distance of five feet, was not intentionally murdered. Rather, the defendant contended that he was not the person who committed the murder.

In connection with the defendant's alibi defense, the jury was instructed that the state had the burden to prove the identity of the defendant as the perpetrator of the murder and his presence at the scene of the crime beyond a reasonable doubt. And, as we noted in the direct appeal of the case, the evidence adduced by the state was sufficient beyond a reasonable doubt to support the jury's verdict. *Wilson v. State,* supra, 246 Ga. at 63.

We adopt the reasoning of the Sixth Circuit in Reeves,[10] and hold that under the facts of this case, the trial court's charge on malice was harmless beyond a reasonable doubt.

4. The defendant also asserts as error the prosecutor's comments to the jury during closing argument concerning the defendant's failure to produce certain witnesses who allegedly would have given favorable testimony. The defendant recognizes the rule in Georgia is that such comments by a prosecutor are permissible. See *Shirley v. State,* 245 Ga. 616 (1) (266 SE2d 218) (1980); *Contreras v. State,* 242 Ga. 369 (3) (249 SE2d 56) (1978).[11] However, he argues that this violates his rights to due process and equal protection because under another rule the defendant is not permitted to comment on the state's failure to produce certain witnesses. See *Brown v. State,* 150 Ga. App. 831 (2) (258 SE2d 641) (1979), cert. denied; *Gannaway v. State,* 142 Ga. App. 87 (2) (235 SE2d 392) (1977). The latter rule was not applied to this defendant.

Pretermitting the question of standing, we view this argument as presenting only an issue under the equal protection clauses of the United States and Georgia Constitutions. Because no fundamental right or suspect classification is involved, the disparity between the two rules must only meet the rational relationship test. See generally San Antonio Independent School Dist. v. Rodriguez, 411 U. S. 1, 55 (93 SC 1278, 36 LE2d 16) (1973); *McDaniel v. Thomas,* 248 Ga. 632, 638-39 (285 SE2d 156) (1981).

---

[10] See also United States v. Frady, —— U. S. —— (102 SC ——, 71 LE2d 816) (1982); Mason v. Balkcom, supra, at [7].

[11] "Although the prosecutor is prohibited from commenting on the defendant's failure to testify, the prosecutor can argue to the jury the inferences to be drawn from the defendant's failure to produce witnesses, who are competent to testify and who allegedly would give evidence favorable to the defendant." (Cits. omitted.) *Shirley v. State,* supra, 245 Ga. at 618.

In closing argument, both the prosecution and the defendant are permitted to argue "reasonable deductions" from the evidence. See, e.g., *Jordan v. State,* 247 Ga. 328, 349 (276 SE2d 224) (1981). Notwithstanding the fact that the burden of proof is upon the state, it is merely a truism to say that a person charged with a criminal offense will put before the jury evidence to corroborate his innocence or create a reasonable doubt if such evidence is available. Thus, when the prosecution comments on the defendant's failure to produce purportedly favorable evidence, it is urging the jury to make the reasonable deduction that there exists no such favorable evidence.

In contrast, it is not reasonable to infer that the state's failure to produce all available inculpatory witnesses means that their testimony would not have been inculpatory or would have been exculpatory. For example, assume there are numerous eyewitnesses to a shooting, that all can testify that the shooting occurred and that some can identify the defendant as the assailant. For a variety of reasons, the state might choose to call only some of the witnesses at trial, even though the others if called would have given corroborating testimony against the defendant. It is not reasonable to infer from the fact that there were uncalled eyewitnesses, that the uncalled eyewitnesses would have exonerated the defendant. Although there might be exceptions to the rule that defense counsel cannot comment on the prosecutor's failure to produce witnesses depending upon the facts of a particular case, this rule was not invoked against this defendant. We therefore find no equal protection violation here on the face of the two rules because there is a rational reason for the disparity between them.

5. At the conclusion of the arguments during the sentencing phase of the defendant's trial, the jury was charged as follows:

"Members of the Jury, the defendant in this case, Joseph 'Joey' Wilson, Jr., having been found guilty of the offense of murder, it is now your duty to determine the penalty which shall be imposed as the punishment for that offense.

"The law provides that in all cases in which the death penalty is sought, and is authorized by the law, that the Judge shall give to the jury instructions regarding aggravation and mitigating circumstances.

"Now in this case the State of Georgia contends that the offense of murder, and one of the aggravating circumstances under our law is that the offense of murder was committed while the offender was engaged in the commission of an additional capital felony, being the kidnapping of the person of George A. Knox, resulting in bodily injuries to George A. Knox.

"The State has the burden of proving this aggravating circumstance beyond a reasonable doubt. Now if you members of the jury find beyond a reasonable doubt that the offense of murder of George A. Knox was committed under the foregoing aggravating circumstance that I just read to you, you may, if you see fit, recommend that this defendant, Joseph 'Joey' Wilson, Jr., be put to death.

"The form of your verdict for such a recommendation would be: 'We fix the penalty as death.' If you recommend the death penalty, you must also add to your verdict: 'We find the following aggravating circumstance,' and you would write out the aggravating circumstance that you find beyond a reasonable doubt.

"You must set it forth in writing. It must be signed by your Foreman. The aggravating circumstance that you have found to exist beyond a reasonable doubt. If you do add the foregoing recommendation, then this accused, Joseph. 'Joey' Wilson, Jr., will be sentenced to be put to death by electrocution.

"The other punishment that you may recommend is life in prison. If you do not believe that Joseph 'Joey' Wilson, Jr., should be put to death, you may recommend life imprisonment. The effect of that would be that the Court would sentence Joseph 'Joey' Wilson, Jr., to life imprisonment.

"Now gentlemen, even if you find beyond a reasonable doubt that the State of Georgia has proved the existence of the aggravating circumstance given to you in this charge, you nonetheless are not required to recommend that the defendant Wilson be put to death. You shall consider any mitigating circumstances. Mitigating circumstances are those circumstances which in fairness, in mercy, shall be considered by you in fixing punishment.

"You may, if you see fit, and this is a matter entirely in your discretion, provide for a life sentence for the accused Wilson, based upon any mitigating circumstances, or reasons satisfactory to you, or without any reason, if you see fit to do so.

"You may recommend life imprisonment even though you have found the aggravating circumstance given to you in this charge to have existed beyond a reasonable doubt."

The defendant contends that the foregoing charge inadequately informed the jury as to the law on mitigating circumstances. He relies solely on the recent case of Spivey v. Zant, 661 F2d 464 (5th Cir., 1981), where the Circuit Court found the charge approved in *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978), cert. denied, 439 U. S. 1039, to be inadequate.

The two leading cases in Georgia concerning the required jury instuctions on mitigating circumstances in death penalty cases are

*Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). In *Fleming* and *Hawes,* we held that it was error not to charge the jury that they could recommend a life sentence even if they found the existence of a statutory aggravating circumstance. See *Fleming v. State,* supra, 240 Ga. 146-47; *Hawes v. State,* supra, 240 Ga. at 334-35. The sentencing instructions given the jury at the trial of this case comply with *Fleming* and *Hawes.*

In Spivey v. Zant, supra, the Fifth Circuit held that "[t]he eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, . . . but which also 'guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender . . .' Jurek v. Texas, 428 U. S. at 274, 96 SC at 2957. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations." Spivey v. Zant, supra, 661 F2d at 471.

Applying this standard to the charge in the present case, we find no error. The jury was instructed as to the nature of mitigating circumstances and, that based on mitigating circumstances, they could recommend a life sentence even if they found the presence of a statutory aggravating circumstance. This satisfies the constitutional requirements of Spivey v. Zant, supra.

6. In the final enumeration of error, the defendant argues that this court failed to carry out adequate review of the proportionality of his death sentence. See *Wilson v. State,* supra, 246 Ga. at 69-70.

In response to Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972), holding Georgia's death penalty statute unconstitutional, the General Assembly enacted Code Ann. § 27-2537, Ga. L. 1973, p. 159, 165. Section 27-2537 provides for automatic appeal to this court of all cases where the death penalty has been imposed and requires us to determine, inter alia: "(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code Ann. § 27-2537 (c). In connection with our proportionality review, we are also required to include with our opinion a reference to the "similar cases" considered in making the proportionality determination. Code Ann. § 27-2537 (e).

In accordance with this mandate, we included with the opinion

in the direct appeal of this case an appendix listing six "similar cases" in which the death penalty has been imposed.[12] The defendant challenges our proportionality review by contending that these six cases are not in fact "similar" to his. He states that in contrast with the facts of this case, in five of the cases cited in our appendix the elements of armed robbery and the "core findings" of aggravating circumstance (b)(7) (the offense was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim," Code Ann. § 27-2534.1 (b)(7)) were present. Thus, the defendant argues that because these cases contain factors "vastly more reprehensible" than those in his case, his death sentence is disproportionate. (Lamentably we have come to think of some malice murders as more reprehensible than others.) He points out that in some of the six "similar cases" the defendants murdered strangers. He argues that in some of the six cases the victims pled for their lives. He notes that the appendices in the six cases do not always cite the same cases and he concludes that there are no cases similar to his.

We disagree. Rarely, if ever, will the facts surrounding two capital felony cases be exactly alike and we are not required to find identical cases for comparison in our proportionality review. Instead, we must determine whether the defendant's sentence of death is excessive in comparison to the sentences imposed in "similar cases" upon "similarly situated defendants." See Gregg v. Georgia, 428 U. S. 153, 198 (96 SC 2909, 49 LE2d 859) (1976); Code Ann. § 27-2537 (c)(3).

Just as here, in each of the cases cited in our appendix to the direct appeal the victim was abducted at gunpoint, taken to a remote area, and cold-bloodedly murdered. In a majority of the cited cases, the victim was killed with a shotgun. As we stated on the appeal, these cases are "similar" to the case at hand because they "show that juries are not unwilling to impose the penalty of death for murder where the victim has been kidnapped and deliberately put to death." Wilson v. State, supra, 246 Ga. at 69. The fact that in some cases a defendant guilty of a deliberate abduction-murder does not receive the death penalty does not invalidate the death sentences imposed on other

---

[12] The six cases are: Pryor v. State, 238 Ga. 698 (234 SE2d 918) (1976), cert. denied, 434 U. S. 935 (1977); Morgan v. State, 241 Ga. 485 (246 SE2d 198) (1978), cert. denied, 441 U. S. 967 (1979); Westbrook v. State, 242 Ga. 151 (249 SE2d 524) (1978), cert. denied, 439 U. S. 1102; Ruffin v. State, 243 Ga. 95 (252 SE2d 472) (1979), cert. denied, 444 U. S. 995; Hardy v. State, 245 Ga. 272 (264 SE2d 209) (1980), vacated, 449 U. S. 988, affirmed, 247 Ga. 235 (1981); Dampier v. State, 245 Ga. 427 (265 SE2d 565) (1980), cert. denied, 449 U. S. 938.

defendants. Gregg v. Georgia, supra, 428 U. S. at 199. We therefore find this enumeration to be without merit.

The habeas court did not err in denying relief for any reason assigned.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 21, 1982 —
REHEARING DENIED MAY 18, 1982.

*Bruce S. Harvey,* for appellant.

*Michael J. Bowers, Attorney General, William B. Hill, Jr., Assistant Attorney General, Janice G. Hildenbrand, Staff Assistant Attorney General,* for appellee.