## 67969. WIDDOWSON v. THE STATE.

QUILLIAN, Presiding Judge.

Appellant Frederick G. Widdowson was indicted and tried for criminal attempt to commit theft by extortion. The jury returned a verdict of guilty and he appeals his sentence of five years, four to be

served in prison.

The State presented evidence that the victim, Michael Baker, received a telephone call at his home on April 5, 1983 at about 10:30 p.m. The caller identified himself as Allen Duvalilier from New Orleans, and stated that he had been employed to collect $17,000 which Baker owed his client due to a business investment that had not worked out. Baker was told that if he did not provide the money by the next day he would be castrated and "blown away" by a blast from a 12 gauge shotgun. Baker called a neighbor who was a GBI agent and was advised to write down as much of the conversation as he could remember and to tape all subsequent calls. County police called into the case by the GBI also arranged to have taps put on Baker's residence and office telephones. Two days later about 7:30 p.m. Baker was contacted at his office by "Duvalilier" and told that the amount of money sought had been raised to $22,000. This call was taped and traced to its point of origin, Leon's Body Shop. Seven successful telephone traces were made between April 7 and April 28 to various locations; however, the money demanded was never delivered due to confusion over the designated meeting place. Leon Pirtle, owner of the body shop, testified that appellant was a friend of his who had come to his body shop about 7:00 p.m. on April 7 and asked to use the telephone, although Pirtle did not actually see him make a telephone call.

On May 4 appellant was requested to come to the GBI office to answer some questions. He was advised of his Miranda rights, signed a waiver of counsel form, and was questioned. After interrogation appellant asked to call his attorney and was allowed to do so. When asked to sign a written statement compiled from the interrogating officers' notes, appellant refused, and was placed under arrest. However, he signed a waiver of a search warrant for the search of his automobile and later also signed a consent form for the search of his residence. During the search of his house appellant identified certain documents as having been written by him.

A handwritten note containing substantially the same extortion message telephoned to Baker by "Duvalilier" was found during the search of appellant's car. Appellant identified the handwriting as his own but was not allowed to touch the paper. A latent print examiner of the State Crime Lab testified that he had analyzed this exhibit and five identifications of appellant's fingerprints were found thereon. This examiner also stated that several of these latent prints had been placed on the paper prior to the handwriting on it. A handwriting expert from the State Crime Lab testified that the note seized from appellant's vehicle had been written by the same person who wrote three exemplars seized during the search of appellant's residence. One of these was an intimate note to appellant's wife signed "Fred." Ap-

pellant moved for a directed verdict at the close of the State's evidence, which was denied, and the defense rested. Appeal is from the denial of appellant's motion for new trial.

1. At a pretrial hearing outside the presence of the jury appellant successfully sought to have excluded any testimony that he identified certain handwriting exemplars seized at his home as his own, on the basis that such statements were made after he had invoked his right to have his attorney present. However, based upon the ruling in *Wilson v. Zant*, 249 Ga. 373 (1) (290 SE2d 442), the trial court allowed the seized documents to go before the jury, and appellant asserts that this constituted reversible error. We do not agree.

*Wilson v. Zant*, supra, is an interpretation by our Supreme Court of the holding of the United States Supreme Court in Edwards v. Arizona, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), in which "[a] distinction is drawn between police conduct which infringes directly upon an accused's constitutional rights and conduct which violates only the prophylactic rules developed [in Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)] to protect those rights. The 'fruit' of a statement which was obtained in violation of a constitutional right must be suppressed, [cits.], but the 'fruit' of a statement obtained in violation of a prophylactic rule is not automatically subject to the exclusionary rule. [Cits.]" *Wilson v. Zant*, 249 Ga. at 378, supra. The Georgia court accepted the fact that Edwards "established a per se exclusionary rule" insofar as it concerned the admissibility of *statements* "given pursuant to police initiated custodial interrogation after the defendant had invoked his right to counsel," but refused to extend it to *physical evidence* obtained as the result of "a voluntary but Miranda-tainted statement." Ibid. at 376-378.

We do not think the police conduct here infringed directly upon the appellant's constitutional rights. After appellant requested to telephone his attorney but was unable to reach him, he continued to communicate freely with the police officers. Moreover, although he was not willing to sign a statement until he had talked to his lawyer, he consented to the search of his automobile and, when shown the note that was found there, volunteered that it was in his handwriting. Appellant also voluntarily identified the items which he had written from several examples collected in his home by the police during that consensual search.

The latest expression of the Supreme Court in this regard is that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation . . . [T]here must be a showing that the 'suspect himself initiate[d] dialogue with the authorities.' . . . '[Where the conversation is not wholly one-sided], the question would

be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.'" Oregon v. Bradshaw, __ U. S. __ (103 SC 2830, 77 LE2d 405, 411-12) (1983); quoting Edwards v. Arizona, 451 U. S. at 486, supra, n. 9.

We think these standards were satisfied under the totality of the circumstances in the instant case. While he had previously invoked his Miranda rights to remain silent as to any further statements to the police, appellant testified at the pretrial hearing that he freely volunteered the information as to which handwriting examples were his in the documents found during the searches to which he consented, so that his car and home would not be "torn up" by a search at which he was not present after a warrant was obtained. The trial court correctly suppressed any testimony as to appellant's identification of these exemplars as his own, although the documents themselves were allowed. Since the statements made by appellant identifying these documents were undisputably voluntary, regardless of his reason for doing so, the documents were admissible under the Bradshaw test for whatever evidentiary weight they might have, even if the identifying statements were not. These questions were properly considered and determined by the trial judge here, as they were in Bradshaw, supra, and we have no reason to dispute his conclusions based upon his first-hand observation of the witnesses to the events involved. Compare *Platt v. State*, 163 Ga. App. 776 (1) (296 SE2d 113).

2. Nor do we agree with appellant's contention that the trial court erroneously instructed the jury without a request or evidence to support such a charge as to the law of parties concerned with the commission of a crime. See OCGA § 16-2-21. There was circumstantial evidence indicating that others may have been involved with appellant in the commission of the crime. Baker could not identify appellant's voice as the voice of the caller of the extortion threats. The police traced calls made from various locations around the immediate area and appellant admitted having made calls from those locations on the same dates, but denied ever telephoning Baker at his home or office. The note found in appellant's car in his handwriting was almost verbatim the message received by Baker on the first call, and since the voice of the caller was never identified as appellant, a distinct inference arises that the caller was another party to the extortion scheme. "'A charge on this subject is error only where there is insufficient evidence, circumstantial or otherwise, to support the theory. [Cit.]' [Cit.]" *Evans v. State*, 138 Ga. App. 460, 461 (3) (226 SE2d 303). See also *Koza v. State*, 158 Ga. App. 709 (7) (282 SE2d

131). The evidence was sufficient to support the charge.
*Judgment affirmed. Birdsong and Carley, JJ., concur.*

DECIDED MAY 31, 1984.

*Curtis W. Miller,* for appellant.
*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney,* for appellee.