S90A1427. BUTTERSWORTH v. THE STATE.
(400 SE2d 908)

HUNT, Justice.

Cass Lee Buttersworth was convicted by a jury of murder, armed robbery, kidnapping, possession of a sawed-off shotgun and possession of a firearm during the commission of a felony in Tattnall

County in December 1989.[1] He appeals raising as error the improper admission of the corpus delicti and of sleep talk and the failure of the trial court to grant a mistrial due to improper remarks by the prosecutor during his opening statement and during his closing argument. We affirm.

Mrs. Mary Mosely, the mother of the victim, Jewel Mosely, spoke with her daughter several times on Thursday evening, October 27, 1988. Mrs. Mosely was aware that the defendant, Cass Buttersworth, the son of the victim's common-law husband, was visiting the victim's home in order to do some hunting and that the victim was afraid of being alone with him. The victim's husband, a truck driver, was out of town. When the victim did not report for work the next morning, a missing person's report was filed. Her car was found in a ditch in Tattnall County.

The defendant was taken into custody the Sunday after the victim disappeared and was read the *Miranda* warnings. After investigators first spoke to the defendant, they sought to verify the defendant's story. Friends of the defendant told the investigators the defendant had asked them to say they had been partying with him at the river. One reported the defendant told him he had "blown someone away," and offered his friend $50 to say they had been together on Thursday night.

At the second interview, the defendant was confronted with the above facts and thereafter refused to cooperate, saying he would not be taken advantage of by the investigating special agent.

On Monday, the sheriff asked the defendant's father to talk to the defendant because the sheriff could not get any information from him. The defendant told his father where to find the victim's body and the murder weapon, but, when the sheriff again tried to talk to him, the defendant refused, saying he preferred to talk to an attorney. From the information the father supplied, however, the sheriff was able to locate the victim's body, less than a half mile from where the car had been found. The sheriff was unable to locate the weapon, but the defendant later volunteered to, and did, show him where he had hidden the sawed-off shotgun. Defendant's father identified the shotgun as belonging to him.

In addition, the defendant later initiated a conversation with a jailer explaining that the victim had run the car off the road and he had killed her nearby, and that he had to kill the victim because it

---

[1] The victim died on October 27, 1988. The defendant was indicted during the April Term 1989, and tried on December 13 and 14, 1989. He filed his motion for new trial on January 5, 1990, the trial transcript was certified on March 21, and the motion was denied on June 8. The defendant filed his notice of appeal on July 2, the appeal was docketed in this court on July 30, and submitted for decision on September 17, 1990.

was her time to die.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of murder, armed robbery, kidnapping and possession of a firearm beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State*, 245 Ga. 89, 90 (263 SE2d 131) (1980).

2. Buttersworth complains of the admission of evidence of the corpus delicti. After a *Jackson v. Denno*[, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)] hearing, the trial court ruled that the father acted as the agent of the sheriff and that *Miranda [v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)] warnings should have been given to the defendant before his father spoke with him. Because the warnings were not read to the defendant, the contents of the defendant's remarks to his father were suppressed. The trial court nevertheless found that the defendant's statements were voluntarily made and held the "fruits" of their conversation, the location and condition of the body of the victim, were admissible under *Wilson v. Zant*, 249 Ga. 373, 377-378 (290 SE2d 442) (1982).[2]

Although Buttersworth had, arguably, after the second interview, invoked his Fifth Amendment right to remain silent, *Michigan v. Mosley*, 423 U. S. 96 (96 SC 321, 46 LE2d 313) (1975), he had not, at the time the father was sent to speak with him, been formally charged with the crime under investigation. Further, he had not requested an attorney. Thus, the defendant's right to counsel is not implicated in this decision. *Massiah v. United States*, 377 U. S. 201 (84 SC 1199, 12 LE2d 246) (1964); *Maine v. Moulton*, 474 U. S. 159 (106 SC 477, 88 LE2d 481) (1985). Compare *Wilson v. Zant*, supra, and *Roper v. State*, 258 Ga. 847 (1) (375 SE2d 600) (1989).

In *Illinois v. Perkins*, ___ U. S. ___ (110 SC 2394, 110 LE2d 243) (1990), the United States Supreme Court examined the admissibility of an in-custody statement made without the benefit of *Miranda* warnings where the in-custody statement was voluntarily made

---

[2] In *Wilson v. Zant*, supra at (1), the defendant had invoked the right to counsel rather than the right to remain silent. See fn. 3, infra. Concern over the continued viability of *Wilson v. Zant*, supra, was raised in a footnote in *Strickland v. State*, 260 Ga. 28, 29, fn.4 (389 SE2d 230) (1990), but we need not resolve that issue here since we approve the trial court's ruling under *Illinois v. Perkins*, infra. Neither do we consider the admissibility of this evidence under *Nix v. Williams*, 467 U. S. 431 (104 SC 2501, 81 LE2d 377) (1984), because the state did not prove that this evidence would have been inevitably and independently discovered. Under *Nix*:

If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received.

*Nix v. Williams*, supra at 104 SC 2509.

to an undercover agent disguised as a fellow inmate, before the defendant was formally charged with the crime under investigation and before he requested an attorney. Holding the statement was admissible, the Court reasoned:

> [t]he use of undercover agents is a recognized law enforcement technique, often employed in the prison context. . . . The interests protected by *Miranda* are not implicated in these cases, and the warnings are not required to safeguard the constitutional rights of inmates who make voluntary statements to undercover agents. We hold that an undercover law enforcement officer posing as a fellow inmate need not give *Miranda* warnings to an incarcerated suspect before asking questions that may elicit an incriminating response. The statements at issue in this case were voluntary. . . .

If an undercover agent may question an inmate under these circumstances without first giving the *Miranda* warnings, then certainly the defendant's father, even at the request of the sheriff, may do so without violating defendant's *Miranda* rights or his right against self-incrimination, previously exercised. Buttersworth's invocation of his right to silence during the second interview was "scrupulously honored" by the investigator, who returned Buttersworth to his cell as soon as he indicated he did not want to discuss the case any further. *Michigan v. Mosley*, supra, 96 SC at 326.[3] Thus, the statements, if voluntarily made by the defendant to his father, were admissible in this case.

The trial court found the statements voluntary and its finding is supported by the evidence. The defendant spoke freely to his father, apparently with full knowledge of the consequences of revealing where the victim's body had been left. Unless clearly erroneous, a trial court's determination that a statement is voluntary will be upheld on appeal.[4] *Crawford v. State*, 245 Ga. 89 (2) (263 SE2d 131) (1980); *Gates v. State*, 244 Ga. 587, 590-591 (261 SE2d 349) (1979).

---

[3] "We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.' " *Michigan v. Mosley*, supra, 96 SC 321, 326. See fn. 9, pointing out most courts have held that *Miranda* does not create a per se proscription of any further interrogation once the defendant has invoked his right to remain silent and fn. 10, stating that interrogation must cease until an attorney is present only if the defendant requests an attorney. Compare *Minnick v. Mississippi*, ___ U. S. ___, 59 USLW 4037 (December 3, 1990).

[4] There is, in fact, no contention that the statement was involuntary, except in the sense that one made without constitutional warnings, where such warnings are required, is involuntary. A determination of involuntariness on such a basis would be more a question of law than an issue of fact.

Since the defendant's statement to his father could have been admitted,[5] it follows that the fruits of the statement were also admissible and the corpus delicti was properly in evidence as part of the state's case.

3. The brief, but incriminating, statements made by Buttersworth in his sleep were not inadmissible for the reasons asserted at trial. *Sutton v. State*, 237 Ga. 418 (228 SE2d 815) (1976). The statements in *Godfrey v. State*, 258 Ga. 28 (365 SE2d 93) (1988), were excluded for a different reason, and *Godfrey* does not, as now urged by Buttersworth, require a reversal.

4. Finally, the complained of remarks made by the prosecutor during the opening statement and the closing argument present no grounds for reversal. The trial court did not abuse its discretion in refusing to grant a mistrial.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 21, 1991.

*Cowart & McCullough, Hugh J. McCullough, Hal T. Peel,* for appellant.

*Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Robert D. McCullers,* for appellee.

---

[5] That the statements were suppressed by the trial court was obviously a benefit to the defendant.