UNITED STATES of America ex rel. Larry WINSETT, Petitioner,

v.

Odie WASHINGTON, Respondent.

No. 94 C 821.

United States District Court, N.D. Illinois, Eastern Division.

June 3, 1994.

Larry Winsett, pro se.

Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Larry Winsett brings this pro se petition pursuant to 28 U.S.C. § 2254 seeking habeas corpus relief from his conviction for attempted murder, solicitation of murder, and conspiracy to commit murder. Winsett contends that he was denied a fair trial because the trial court denied a motion in limine to exclude evidence obtained as a result of statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.E.2d 694 (1966). For the following reasons, we deny the petition.

### I. Factual Background

In early 1985, Arturo Zarinana was murdered. At trial, the prosecution set out to prove that David Robinson paid Winsett $20,000 to kill Zarinana (who was married to a woman with whom Robinson was having an affair). In turn, Winsett paid Glen Spruille $2,000 to carry out the murder. Although Zarinana survived the attack (which consisted of four bullet wounds), and testified at trial, he was unable to describe or identify his assailant, except to say that the attacker was male and wore a ski mask.

Winsett was arrested at his home on February 20, 1985 for Zarinana's murder. When the police arrived, Winsett stated that he wanted a lawyer, and instructed his wife to call his attorney. After arriving at the police station, the arresting officers removed Winsett's handcuffs and took him to an interrogation room where they read him his *Miranda* rights. Winsett refused to sign the waiver form until he spoke with his attorney. Nonetheless, the officers continued to question Winsett for approximately two to two and a half hours. During the questioning, Winsett again asked for his attorney. However, before he was permitted to speak with his lawyer, Winsett made inculpatory statements, including the identification of his accomplice, Glen Spruille. Prior to trial, Winsett moved to suppress his statements, prompting the judge to hold suppression hearings. Despite the police officer's denial that Winsett asked for an attorney either in his home or during the initial interrogation, the trial court found Winsett's testimony, and that of his family, "extremely credible." As a result, the court granted Winsett's motion to suppress his statements as having been taken after Winsett requested counsel. At the same time, the court specifically found that the statements were not involuntary for purposes of possible impeachment under *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1, 4–5 (1971).

In addition, Winsett filed a motion in limine to exclude Spruille's testimony at trial under the "fruit of the poisonous tree" doctrine. Following a hearing, the trial court denied the motion, finding that the "present state of the law was such that the motion was not well taken."

At trial, Spruille testified that Winsett solicited him to murder Zarinana for $2,000. According to Spruille, Winsett gave him a $1,000 down payment, described Zarinana and the car he would be driving, and then paid Spruille another $1,000 a week after the shooting.

In addition to Spruille's testimony, Robert Thacker, an employee at Robinson's compa-

ny, testified that Robinson had approached him and asked him to kill Zarinana. Although Thacker himself refused the offer, he told Winsett about the $20,000 Robinson was willing to pay for Zarinana's murder. Based on Winsett's proffer that he knew someone who would do it, Thacker testified that he arranged a meeting between Winsett and Robinson. At the meeting, Robinson and Winsett discussed the price and agreed to refer to the murder as the sale of a car in subsequent conversations. Kenneth Thacker (Robert's brother), then testified that he took a phone message for Robinson on January 9, 1985. The caller identified himself as Larry and said that he had sold Dave's car.

On direct appeal, Winsett's counsel did not challenge the trial court's denial of the motion in limine and the conviction was upheld. In 1990, Winsett petitioned for post-conviction relief, claiming that Spruille's testimony should have been excluded as "fruit" of Winsett's illegally obtained statements, and arguing that his appellate counsel had been constitutionally ineffective for failing to raise the issue on direct appeal.

The same judge who had presided over Winsett's trial held an evidentiary hearing on the post-conviction petition. During the hearing, Michael Fusz, the chief of felony review at the Lake County State's Attorney's office, testified that nothing in the police reports indicated that the victim or eyewitnesses could have identified Spruille as the shooter. Nor was there any indication that the Waukegan police department was aware of Spruille's involvement in the crime prior to Winsett's inculpatory statements. However, the investigation itself, including interviews with Robinson's employees, was ongoing. Ultimately, the trial court denied Winsett's petition, finding (1) that the violations that occurred during Winsett's interrogation were not of constitutional magnitude, and (2) that the state had established inevitable discovery of the challenged evidence.

The appellate court reversed, holding that Winsett had been denied effective assistance of counsel on direct appeal due to his attorney's failure to challenge the trial court's denial of the motion in limine. According to the appellate court, the police conduct violated Winsett's right to counsel and should have been excluded under the fruit of the poisonous tree doctrine. The court further rejected the trial court's conclusion that Spruille inevitably would have been discovered.

The Illinois Supreme Court, in a long and thorough opinion, reversed the appellate court, ruling, among other things, that Winsett's counsel had not been constitutionally deficient since any error he might have committed in failing to raise the motion in limine issue on appeal did not result in prejudice. The Illinois high court reasoned that current United States Supreme Court law, although silent on the precise question at issue, directed the conclusion that the alleged events amounted to a violation of a prophylactic rule rather than an infringement of Winsett's Fifth Amendment rights. Accordingly, there was no "poisonous tree," thus any evidence obtained as a result of Winsett's statement did not qualify as excludable fruit.

## II. Discussion

Winsett now seeks habeas relief, arguing that the trial court erroneously denied his motion in limine to exclude Spruille's testimony at trial. The question presented by the instant petition, although somewhat novel, is straightforward: should evidence obtained as the result of voluntary statements made in violation of an arrestee's request to speak to an attorney be excluded as fruit of the poisonous tree?

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." Furthermore, the Supreme Court has held that this privilege against self-incrimination applies in all situations where a person may feel compelled to testify against himself, including custodial interrogations. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In an effort to protect the Fifth Amendment rights of people subjected to interrogation, the *Miranda* Court ruled that police officers must advise criminal suspects of their rights under the Fifth and Fourteenth Amendment before questioning them about any supposed wrongdoing. The result is the now-ubiquitous *Miranda* warnings, which provide detainees an opportunity to exercise their rights.

■ Among the *Miranda* warnings is an admonishment that suspects have the right to an attorney. Part of the theory behind permitting a suspect to request counsel, is that the presence of a lawyer lessens the sense of compulsion that otherwise surrounds a custodial interrogation and reduces the risk that overzealous police officers will coerce a confession. *See Miranda,* 384 U.S. at 458, 470, 86 S.Ct. at 1619, 1626. Indeed, the Court has gone on to explain that a request for counsel is a *per se* invocation of a suspect's Fifth Amendment rights. *Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197, 209 (1979). As a result, once a suspect has requested an attorney, police officers are to cease all questioning, and any subsequent statements elicited by police in the absence of counsel are presumed to be involuntary and may not be used in the prosecution's case-in-chief.[1] *See Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

■ In the instant case, the trial court found, and the government does not now contest, that Winsett invoked his Fifth Amendment right to counsel during custodial interrogation, only to have that request ignored for approximately two hours of additional questioning. As a result, the trial court held that Winsett's statements could not be used as substantive evidence at trial. By extension, Winsett argues, Spruille's testimony—obtained as a result of statements taken in violation of *Miranda*—should likewise have been excluded from the state's case-in-chief.

The fruit of the poisonous tree doctrine, on which petitioner relies, derives from the Fourth Amendment and mandates the exclusion of evidence secured as a result of unlawful searches and seizures.[2] At root, the doctrine is designed to protect a suspect's constitutional rights by removing any possible incentive to violate them. *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961). However, this doctrine applies only where a constitutional right has in fact been violated. That is, there must be a "poisonous tree" in order for a court to find that contested evidentiary "fruit" should be excluded.

Like the Fourth Amendment exclusionary rule, the *Miranda* exclusionary rule is a judicially created device designed to deter the police from violating a suspect's constitutional rights by prohibiting the use of statements obtained in contravention of *Miranda's* strictures. At the same time, the *Miranda* exclusionary rule differs from the Fourth Amendment exclusionary rule. Most importantly, unlike the fruit of the poisonous tree doctrine, the *Miranda* exclusionary rule can be triggered by violations that fall short of constitutional infractions. In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court made clear that statements taken in derogation of *Miranda* could not be used as substantive evidence by the prosecution, even if the statements were not compelled within the meaning of the Fifth Amendment.

What is less clear is whether the fruit of the poisonous tree doctrine applies to evidence discovered as the result of statements taken in violation of *Miranda.* In two cases, the Supreme Court has refused to exclude evidence in similar situations. In *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), Tucker was arrested and subjected to custodial interrogation. At the time of his arrest, the police apprised Tucker that he had the right to an attorney. However, they neglected to inform him that he

---

1. There are some exceptions. If the state demonstrates that the defendant received *Miranda* warnings and knowingly and intelligently waived his privilege against self-incrimination, the statements may be used as substantive evidence. *Miranda,* 384 U.S. at 475–77, 86 S.Ct. at 1628–29 (setting forth the "*Miranda* exclusionary rule"). Alternatively, if the defendant himself initiates further discussion in which he inculpates himself and knowingly waives his rights, those statements may also be used in the prosecution's case.

2. Although originally expounded in cases involving Fourth Amendment violations, "the 'fruit of the poisonous tree' doctrine has not been limited to cases in which there has been a Fourth Amendment violation. The Court has applied the doctrine to violations of the Sixth Amendment, as well as of the Fifth Amendment." *Nix v. Williams,* 467 U.S. 431, 442, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984) (citations omitted).

had the right to appointed counsel if he could not afford one of his own choosing. In the face of these deficient warnings, Tucker declared that he understood his rights and did not want counsel.[3] Tucker then proceeded to divulge the name of an alibi witness who, instead of corroborating Tucker's story, provided the police with damning information. While Tucker's statements themselves were excluded under *Miranda*, the witness was allowed to testify for the prosecution.

Central to the Supreme Court's analysis was its distinction between violations of prophylactic rules on the one hand (such as *Miranda* warnings), and constitutional deprivations on the other (such as coerced statements). *Tucker*, 417 U.S. at 444, 94 S.Ct. at 2364 (*Miranda* warnings are "not themselves rights protected by the Constitution," but are simply prophylactic standards designed to help preserve a suspect's privilege against compelled self-incrimination.). In *Tucker*, the Court determined that Tucker's statements, although taken in violation of *Miranda*, were nonetheless voluntarily made. Because the police did not violate any constitutional rights, the Court concluded that the fruit of the poisonous tree doctrine was inapplicable. *Tucker*, 417 U.S. at 445–46, 94 S.Ct. at 2364–65.

The *Tucker* opinion, while clearly stating that a *Miranda* violation is not, by itself, an abridgement of constitutional rights amounting to a poisonous tree, left open the possibility that the fruit of the poisonous tree doctrine might apply in circumstances where the police willfully refused to abide by *Miranda* principles. *See Tucker*, 417 U.S. at 447, 94 S.Ct. at 2365 (Court considered it "significant" to its decision that the police officers did not willfully violate Tucker's rights, but abided by current constitutional principles). Specifically, the Court, eschewing fears that its ruling would undermine the deterrent purposes of the *Miranda* exclusionary rule, noted that deterrence was only furthered where the police had engaged in willful or negligent conduct. Because the police in *Tucker* had abided by the constitutional guidelines in effect at the time of the interrogation, the Court resolved that exclusion would serve little meaningful purpose.[4] *Tucker*, 417 U.S. at 447, 94 S.Ct. at 2365.

In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), another similar case, the Court declined to exclude evidence obtained as the "fruit" of a willful *Miranda* violation. The police in *Elstad* questioned the defendant in his home without giving him any *Miranda* warnings, accusing him of participating in a burglary and eliciting a confession. Only then was the defendant taken to police headquarters and given proper warnings. After waiving his rights, the defendant gave a written statement outlining his criminal conduct. Although the defendant sought to exclude the second statement as fruit of the first confession, taken without the benefit of *Miranda* warnings, the Court reaffirmed that *Miranda* warnings themselves do not amount to constitutional rights, but are simply prophylactic standards intended to safeguard a suspect's Fifth Amendment rights. In other words, the *Miranda* exclusionary rule "sweeps more broadly than the Fifth Amendment itself [and] [m]ay be triggered even in the absence of a Fifth Amendment violation." *Elstad*, 470 U.S. at 306, 105 S.Ct. at 1291–92. Accordingly, pursuant to the *Miranda* exclusionary rule, where *Miranda* warnings have not been given or have been abrogated, courts will presume that any subsequent statements were compelled, and will exclude them from the prosecution's case-in-chief, even if the statements at issue were given voluntarily.

However, the *Elstad* Court went on to observe that, while the *Miranda* presumption was irrebuttable with respect to the use of statements in the prosecution's case, the exclusionary rule did not mandate the omission of unwarned statements for all purposes. *Elstad*, 470 U.S. at 307, 105 S.Ct. at 1292.

---

3. Tucker was arrested and questioned prior to the Supreme Court's ruling in *Miranda*. However, because his trial took place after the decision, *Miranda* provided the governing law.

4. Nor was the Court concerned about the reliability of the witness' statements, since those statements, unlike Tucker's, were entirely free from any taint. *Tucker*, 417 U.S. at 448–49, 94 S.Ct. at 2366.

Instead, the Court specifically determined that *Miranda* violations do not preclude the prosecution from using *voluntary* statements for impeachment purposes on cross-examination. *Id.,* citing *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *See also Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (Court held that voluntary statements taken from defendant after he invokes his *Miranda* right to counsel were admissible to impeach defendant's inconsistent testimony at trial). In support of its ruling, the *Elstad* Court observed that the *Tucker* Court had refused to apply the fruit of the poisonous tree doctrine to *voluntary* statements taken in violation of *Miranda* on the basis that there was no constitutional violation, and therefore no poisonous tree.

The factual distinctions between *Tucker* and *Elstad* on the one hand, and this case, on the other, are of little moment. Unlike Winsett, the defendants in *Tucker* and *Elstad* never invoked their Fifth Amendment rights. Rather, they made statements without the benefit of proper *Miranda* warnings. However, despite any superficial significance, the fact remains that in this case, just as in *Tucker* and *Elstad,* the statements at issue were made *voluntarily.* The question, then, is whether the police officers' failure to cease all questioning after Winsett requested counsel constitutes a Fifth Amendment violation, rather than simply an abrogation of a prophylactic rule designed to prevent Fifth Amendment violations.

Although neither *Tucker* nor *Elstad* directly addresses this question, relevant Supreme Court caselaw strongly suggests that the right to have counsel present during interrogation and to have all questioning terminate once counsel has been requested do not amount to constitutional rights by themselves, but are more aptly characterized as prophylactic rules fashioned to protect Fifth

Amendment rights. *See Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979). Indeed, the *Miranda* Court itself declared that having counsel present during a custodial interrogation serves as a "protective device" to "dispel the compulsion inherent in custodial surroundings." *Miranda,* 384 U.S. at 458, 86 S.Ct. at 1619. No language in the opinion suggests that the absence of counsel itself, after a request, rises to the level of a Fifth Amendment violation. Moreover, the Supreme Court has not treated this sort of violation as a constitutional violation.

Constitutionally invalid statements, such as coerced statements, have been ruled inadmissible by the Supreme Court for *all* purposes. *See New Jersey v. Portash,* 440 U.S. 450, 460, 99 S.Ct. 1292, 1297, 59 L.Ed.2d 501 (1979); *Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964). On the other hand, statements taken in violation of *Miranda,* which nevertheless do not invade a suspect's Fifth Amendment privilege against self-incrimination, have been admitted for impeachment purposes and have been exempted from the fruit of the poisonous tree doctrine. Indeed, as mentioned above, in *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the Supreme Court specifically admitted for impeachment purposes the voluntary testimony of a suspect given after the suspect had requested, and been denied, access to counsel pursuant to his *Miranda* warnings. Had such a denial constituted a Fifth Amendment violation in and of itself, it should not have been admissible for any purposes under prevailing jurisprudence. Accordingly, we are left with the understanding that the police officers' failure to cease all questioning after Winsett requested counsel does not automatically amount to a constitutional violation.[5] The absence of a constitutional violation, in turn, renders the fruit of the poisonous tree doctrine inapplicable, for without a constitutional

---

5. There is contrary authority. The Illinois appellate court in this case reasoned that "when defendant invoked his *Miranda* right to counsel, he exercised his constitutional privilege against compulsory self-incrimination, and the police interrogation in face [sic] of such exercise was a violation of defendant's constitutional right." *People v. Winsett,* 222 Ill.App.3d 58, 583 N.E.2d 589, 595, 164 Ill.Dec. 673, 679 (2nd Dist.1991). Similarly, in *United States v. Downing,* 665 F.2d 404, 408 (1st Cir.1981), the First Circuit concluded that the police violated an accused's Fifth Amendment rights when they continued to interrogate him after he requested counsel pursuant to *Miranda* warnings.

wrong, there exists no poisonous tree. Moreover, *Tucker* suggests that evidence discovered as a result of voluntary statements made in derogation of *Miranda* need not be excluded, at least where the violation is neither willful nor malicious.

Although exclusion of Spruille's testimony in this case may not have been required under current law, the question of whether his testimony *should* have been excluded bears discussion. The *Miranda* exclusionary rule's primary purpose is to deter unlawful police conduct. By setting a bright line rule that statements taken in violation of *Miranda* may not be used in the prosecution's case-in-chief, the Supreme Court has eliminated much of the incentive that might otherwise exist for infringing a suspect's Fifth Amendment rights. Permitting the government to use information derived from those same statements in its case in chief would seem to seriously undermine the deterrent effect at the root of the exclusionary rule. In other words, while current jurisprudence may not mandate the exclusion of Spruille's testimony, the balance of evils presented here may nonetheless warrant a finding that this evidence is inadmissible.

At issue are two significant judicial objectives. First, courts have a profound interest in ensuring the protection of constitutional rights. The *Miranda* exclusionary rule and the fruit of the poisonous tree doctrine serve as powerful reminders that the rights of suspects are sufficiently sacred that courts will exclude even reliable, constitutionally-gained information for the sake of deterring potential police wrongdoing. On the other hand, overarching our adversarial system is its truth-seeking function. In an effort to promote full and honest testimony, and to permit the use of reliable relevant evidence, courts have permitted the use of constitutionally-obtained testimony for impeachment purposes, even though the evidence itself is tainted by *Miranda* violations. As the *Elstad* Court observed, "[w]hen neither the ini-

tial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." *Elstad*, 470 U.S. at 312, 105 S.Ct. at 1294–95.

This case marks the intersection of these values. To permit the use of Spruille's testimony is to extend current jurisprudence by allowing the government to use the fruit of a *Miranda* violation in its *case-in-chief*, rather than simply to prevent perjury by the defendant. This extension of *Tucker* and *Elstad* represents a potentially significant incursion on the deterrent effect of the *Miranda* exclusionary rule. At the same time, exclusion of Spruille's testimony, deriving as it did from a voluntary statement, would represent a significant extension of the fruit of the poisonous tree doctrine and a distinct encroachment on the court's truth-seeking function.

Perhaps the most compelling question to be addressed in balancing these interests involves the actual danger that admission of this sort of evidence would pose to the rights of detainees. In order to conclude that denial of the present habeas petition would do violence to the deterrent purposes of the *Miranda* exclusionary rule, we would have to believe that such a ruling would significantly embolden police officers to continue questioning a suspect after he requests an attorney in the hopes that he will divulge useful, inculpatory evidence. To follow this course, interrogators would knowingly be abandoning any possibility of using the suspect's statement itself. Furthermore, they would be running the considerable risk (indeed, the most likely outcome) that the suspect's statements would be found involuntary. In that case, not only would the statements be inadmissible for *all* purposes, but the prosecution would have to contend with fruit of the poisonous tree objections. In short, regardless of our ruling here, police officers run significant risks if they fail to cease all questioning after a suspect requests counsel.[6] Because we be-

---

6. Although the Seventh Circuit has not weighed in on this balancing inquiry, it has touched upon these issues. In a post-*Tucker* opinion, the Seventh Circuit addressed the admissibility of "fruit" obtained after an arrestee was questioned

without any *Miranda* warnings and after police denied his requests to speak to counsel. Although the case is factually distinct from the one at hand, given that the defendant's statements

lieve that admitting the contested evidence will have little or no meaningful effect on the manner in which police officers interrogate detainees, we deny Winsett's petition.

### III. Conclusion

For the foregoing reasons, we deny the habeas petition.[7] It is so ordered.

were deemed involuntary, the court made the following observation:

> A majority of the court (other than the author of the opinion [Judge Fairchild]) conclude that even where an interrogation occurs after the *Miranda* decision, and warnings required by it are not given, the deterrent effect of excluding third party testimonial fruits of an otherwise voluntary statement is not sufficient to warrant exclusion. The majority [then-Circuit Judge Stevens and Judge Hastings] would therefore extend *Tucker* to this case to the extent that petitioner's claim rests solely on omission of *Miranda* warnings.
>
> However, were it up to the author of this opinion, we would heed *Tucker's* emphasis on the 'good faith' of the police officers involved, and bar the admission of the third party testi-

> monial fruits of a post-*Miranda* failure to warn an accused of his rights.

*United States ex rel. Hudson v. Cannon,* 529 F.2d 890, 895 (7th Cir.1976).

7. After missing he deadline for responding to the government's answer, Winsett moved for appointment of counsel. Although we agree with petitioner that this issue presents a novel question of law that would ordinarily prompt us to grant such a request, our review of the law leads us to the conclusion that appointed counsel would add little to the analysis, particularly in light of the thorough and competing opinions emanating from the state courts. Accordingly, rather than delay resolution of this matter, we deny petitioner's motion for appointment of counsel.